CENTRAL TRUST CO. OF NEW YORK *vs.* JOHN J. MORAN *et al.*

Argued Oct. 24, 1893.   Affirmed Jan. 12, 1894.

No. 8224.

**Railroad rolling stock is by statute a part of the real estate, as to mortgagees.**

Under Laws 1868, ch. 56, §§ 1–3, (1878 G. S. ch. 34, §§ 71–73,) a railroad, with its rolling stock, and personal property properly belonging to the road and appertaining thereto, is, in favor of mortgagees under mortgages or deeds of trust executed and recorded pursuant to those sections, one property, the different items of which cannot, as to such mortgagees, be levied on separately. The remedy of creditors, in such a case, against the road, its rolling stock, and appertaining personal property, must be against it as an entirety, and not against its several parts.

**Mortgagees may enjoin a levy on such rolling stock as personalty.**

In such a case the mortgagees may have injunction to restrain a levy on a part of the property.

**Mandatory injunctions.**

Courts may, in proper cases, grant injunctions in substance mandatory: that is, requiring some act to be done.

**Temporary mandatory injunctions.**

A court may, under 1878 G. S. ch. 66, tit. 11, grant, in a proper case, a temporary injunction, mandatory in substance; but it ought not to be done, except under peculiar circumstances, and where it is clear the plaintiff will have a final decree, and the court can impose such conditions that the defendant shall sustain no detriment.

**Federal court not interfered with by such levy.**

Execution on a judgment of the state court issued, and was levied by the sheriff. Afterwards, the judgment was removed by writ of error to the Supreme Court of the United States, and a stay bond was executed. *Held*, that an action, the purpose of which is, in effect, to vacate the levy, does not interfere with the jurisdiction of the federal court.

Collins and Buck, JJ., dissenting.

Appeal by defendant, John J. Moran, from an order of the District Court of Ramsey County, *Charles E. Otis*, J., made December 6, 1892, granting a preliminary writ of injunction.

Moran recovered a judgment for $14,077.86 in the District Court of St. Louis County January 30, 1892, against the Eastern Railway

Company of Minnesota, for personal injuries. A motion for a new trial had been denied and the denial affirmed in this Court. *Moran* v. *Eastern Ry. Co.*, 48 Minn. 46. The Railway Company then appealed from the judgment, but it was affirmed in this Court October 31, 1892. A writ of error was on November 4, 1892, obtained and the judgment and record removed to the Supreme Court of the United States where the action is still pending. On November 1, 1892, a writ of execution was issued on the judgment and delivered to the Sheriff of Ramsey County who on that day levied upon and took two locomotive engines and two passenger coaches, and advertised them to be sold on November 14, 1892, to pay the judgment, interest and his fees.

The plaintiff, the Central Trust Company, is a corporation created under the laws of the State of New York and holds a mortgage made to it as trustee January 21, 1888, upon the railway including its stations, yards, right of way, tracks, bridges, buildings, engines, rolling stock, apparatus and tools, to secure the payment of $5,000,000. On November 7, 1892, the Trust Company demanded the property and then commenced this action against Moran and the Sheriff to vacate the levy and restrain the sale, and to require them to restore the engines and cars to the Railway Company. It asked that pending the action they be restrained by preliminary writ of injunction from making the sale and from withholding the possession of the property. On the complaint and supporting affidavits an order to show cause was obtained and at the hearing such preliminary writ was granted. From that order this appeal is taken. On granting the writ the Court said:

"Rolling stock of the kind seized by the defendants is real property and part and parcel of the road, and is so to be considered in all cases where the rights of a mortgagee of the character plaintiff is admitted to be, are brought in question. This is so declared by 1878 G. S. ch. 34, §§ 71–73. That such property is real estate, independent of statute, has been repeatedly decided by the Federal courts and also in some of the State courts; and, having in mind the *quasi* public character of railroad corporations, the purposes they are intended to subserve and the duties they owe to the public, this is the better rule. The attempted levy under the writ was void *ab initio* and the taking of this property out of the possession and off the road

of the Eastern Railway Company was tortious—an unlawful interference with the mortgagee's property.

This property is not in the possession of the Sheriff under a writ issued out of a Federal court. There can be no clash of authority between State and Federal officers with respect to it.

The order allows what in effect operates as an interlocutory mandatory injunction, and I am aware that courts are reluctant to grant mandatory injunctions until final decree. Upon this hearing, however, the allegations of plaintiff's complaint and affidavits stand admitted. The fact that the ability of the railroad company in the performance of its duties to the public is seriously impaired by this unlawful interference with its rolling stock at a time when it is necessary for the purposes of its business, the proper conduct of which is a matter of great interest to plaintiff, as appears from the complaint; and the fact that the defendants are secured by an ample bond, justifies the Court in making this an exception to the general rule in such cases."

*O. W. Baldwin* and *John M. Martin*, for appellant.

The property taken from defendants' possession was personal property and subject to seizure under execution and was not real estate as held by the Court below. 19 Am. & Eng. Ency. of Law, 882, and note, page 883.

The complaint does not state facts sufficient to constitute a cause of action and therefore it does not appear by the complaint that plaintiff is entitled to the relief demanded.

The injunction is not issued for any purpose provided by statute. The object is not to restrain the commission or continuance of an act, but is mandatory requiring defendants to do an act in violation of defendants' legal rights.

The Court has no jurisdiction, because the action of Moran v. Eastern Railway Company of Minnesota has been removed into the Supreme Court of the United States by writ of error, and supersedeas filed, and stay entered, and the proceeding is an attempt to interfere with the jurisdiction of that Court. *Board of Com'rs* v. *Gorman,* 19 Wall. 661; *Kitchen* v. *Randolph,* 93 U. S. 86; *Doyle* v. *Wisconsin,* 94 U. S. 50; *Foster* v. *Kansas,* 112 U. S. 201; *Freeman* v. *Howe,* 24 How. 450; *Lewis* v. *Buck,* 7 Minn. 104.

*Young & Lightner,* for respondent.

The property seized, being part of the railway of the Eastern Railway Company, was not subject to seizure. This is so, both at common law and under Laws 1868, ch. 56. Both before and since the passage of that act, it has been the doctrine of the best considered cases that the road, the franchises and the rolling stock belonging to a railway company, necessary to the operation of the road and in fact so used, constitute an entirety, and the rolling stock is not subject to seizure and sale on execution separate from the road and franchises. *Pennock* v. *Coe,* 23 How. 117; *Coe* v. *Pennock,* 6 Am. Law Reg. O. S., 27; *Gue* v. *Tide Water Canal Co.,* 24 How. 257; *Railroad Co.* v. *James,* 6 Wall. 750; *Scott* v. *Clinton & S. R. Co.,* 6 Biss. 529; *Farmers' L. & T. Co.* v. *St. Joseph & D. C. Ry. Co.,* 3 Dill. 412; *Philadelphia, B. W. & B. R. Co.* v. *Woelpper,* 64 Pa. St. 366; *Youngman* v. *Elmira & W. R. Co.,* 65 Pa. St. 278; *Titus* v. *Mabee,* 25 Ill. 257; *Phillips* v. *Winslow,* 18 B. Mon. 431; *Elizabethtown R. Co.* v. *Elizabethtown,* 12 Bush, 233; Jones, Corp. Bonds, § 137.

In states where rolling stock has been held subject to levy as personalty, the opposite rule has in many cases been enacted by statute. Jones, Corp. Bonds, § 136. In this State, Laws 1868, ch. 56 (1878 G. S. ch. 34, §§ 71–73), clearly declares the rolling stock to be part of the road, at least as between the parties.

The character of the Sheriff's taking and holding the property was not changed by the writ of error and supersedeas. If he lawfully held the property as Sheriff under authority of his writ, he continued to hold it in that capacity. The writ of error and supersedeas could not possibly operate to convert the Sheriff into a Federal officer, or to change the possession of a trespasser or of a Sheriff into that of an officer of the United States Supreme Court. Their whole effect is to forbid further proceedings in the enforcement of the judgment. They cannot operate as a command of the Supreme Court to continue an unlawful possession not justified by the execution.

It was within the power and it was the plain duty of the Court to compel the surrender of the property to the company by interlocutory mandatory injunction. The defendants are unable to produce any

substantial reason, any reason not based on pure technicalities, why the injunction should not have been granted. *Salem Bank* v. *Anderson*, 75 Va. 250; *Lane* v. *Newdig ate*, 10 Ves. 192; *Great Northern Ry. Co.* v. *Clarence Ry. Co.*, 1 Collyer, 507; *Greatrex* v. *Greatrex*, 1 De G. & Sm. 692; *Evitt* v. *Price*, 1 Simons, 483; *Whiteman* v. *Fayette Fuel-Gas Co.*, 139 Pa. St. 492; *Broome* v. *New York & N. J. Tel. Co.*, 42 N. J. Eq. 141; *Whitecar* v. *Michenor*, 37 N. J. Eq. 6; *Longwood Valley R. Co.* v. *Baker*, 27 N. J. Eq. 166; *Toledo, A. A. & N. M. Ry. Co.* v. *Pennsylvania Co.*, 54 Fed. Rep. 730.

GILFILLAN, C. J.   The first and most important question in the case is whether, as against the mortgagees in a railroad mortgage or deed of trust covering the railroad, its rolling stock, and personal property, an execution can be levied on an item of the rolling stock, say a locomotive, and the property sold to satisfy the execution.

In the absence of any statute on the subject, there has been much diversity of decision, some courts (notably, the Supreme Court of the United States) basing their decisions that the levy cannot be made on the proposition that the rolling stock is part of the realty,—fixtures, as it were; others, of which *Canal Co.* v. *Bonham*, 9 Watts & S. 27, is an instance, arriving at the same result upon considerations of public policy, because the road and its appurtenances are necessary to the exercise of the franchises granted by the state; and others holding that the levy can be made, the same as upon the personal property of any other owner.

It is difficult to conceive of rolling stock, which one day may be running on the road of its owner, and the next on some other road, perhaps hundreds of miles away, as real estate or as fixtures, though, no doubt, the legislature may clothe it with some of the legal attributes of that kind of property; and while considerations of public policy may be attributed to the legislature, as a reason for its acts, we do not think they would justify a court in applying to the kind of property in question any other than the rules applied to other property, real or personal, at common law.

We shall assume, therefore, that, but for the statute, the rolling stock covered by a railroad mortgage might be levied on as other mortgaged personal property may be.

The statute applicable to the case is Laws 1868, ch. 56, §§ .1-3; the same being 1878 G. S. ch. 34, §§ 71, 73. The first section authorizes railroad companies to mortgage or execute deeds of trust of the whole or any part of their property and franchises to secure money borrowed by them for the construction and equipment of their roads. The second section authorizes to be included in such mortgages or deeds of trust property, both real and personal, to be afterwards acquired. The last section has a more direct bearing on the question involved, and reads: "Said mortgages or deeds of trust shall be recorded in the office of the register of deeds of each county through which the road mortgaged or deeded may run, or wherever it may hold lands, and shall be notice to all the world of the rights of all parties under the same; and for this purpose and to secure the right of mortgagees or parties under deeds of trust so executed and recorded, the rolling stock and personal property of the company properly belonging to the road and appertaining thereto, shall be deemed a part of the road, and said mortgages and deeds so recorded shall have the same effect, both as to notice and otherwise, as to the personal, as to the real estate, covered by them."

In determining the effects of this act, it is proper to refer to the facts, for they are part of the history of the state, that it was passed in the infancy of railroad construction in the state, when it was the state's public policy to encourage and promote such construction, and when it was known—indeed, was as certain as a mathematical demonstration—that such construction could be done only by railroad companies borrowing money for the purpose on mortgages of their roads and property. These considerations are to be borne in mind as probable reasons influencing the legislature in those parts of the act apparently intended to strengthen the security of the mortgages.

That the section above quoted means something more than merely to provide what shall be notice of the mortgagee's rights, is evident. Had that been the only purpose, the section would have ended at the semicolon. The remainder would have been superfluous. The provision that the rolling stock and personal property properly belonging to the road, and appertaining thereto, shall be deemed a part of the road, has no tendency to give notice of the rights of mortgagees; and it must have been inserted for the purpose specified in

it, to wit, "to secure the rights of mortgagees or parties interested under deeds of trust." How could it secure, or tend to secure, their rights, except by placing that property on a different footing from other personal property on which there is a chattel mortgage? If that property remains just as though that provision were not in the act, and on the same footing with personal property generally, and subject to the same incidents and liabilities, then the provision does not add anything to the security, and is nugatory. Assuming, as we have done, that by the rule of the common law the movable property of a railroad company is like the personal property of any other person, and that any piece of it may, by levy and sale, be separated from the other property of the company, we can conceive of no other purpose of a provision that movable property shall "be deemed a part of the road" but to change that rule, and to make the road, with its rolling stock and personal property proper and necessary for its operation, one property, like the different parts constituting one machine, and inseverable, so far as the rights of mortgagees are concerned. Giving this meaning to the provision, it adds to the mortgagees' security. Giving it any other, it does not. It needs no argument to show that the mortgagees' security would be, so far as the movable property is concerned, precarious, if each item of it is liable to be levied on, sold, and separated from the road to which it appertains. To prevent this was the purpose of the clause making the property part of the road.

The diversity in decisions we have referred to turned on the proposition that the personal property is, or that it is not, part of the road; those courts which hold it to be part of the road, either as part of the realty, or as fixtures or appendages, all agreeing that it cannot be separately levied on, and only those holding it not part of the road deciding that it may be.

As it is not to be supposed that the legislature intended, in passing the act referred to, to deny adequate remedies to unsecured creditors of railroad companies, whose property is under mortgage, we would hesitate to arrive at the above construction of it, even though apparently required by its terms, if we did not see that with that construction the remedies of such creditors, though affected, are not really impaired. They can still levy their execution on any real estate not part of the road, or upon any personal property not rolling stock, nor

"properly belonging to the road and appertaining thereto," that is, property not properly and necessarily used in operating the road. Their remedy against the road, and what properly appertains to it, must, as to the mortgagees, be against it as an entirety, and not against the several parts of it. If their executions are returned unsatisfied, a very sharp remedy is afforded by 1878 G. S. ch. 76, and other adequate remedies are readily suggested.

That these mortgagees may maintain a suit for an injunction to prevent acts tending to disperse the property, there can be no doubt. They have no adequate remedy in an action at law. As they are not entitled to the immediate possession of the property, but only to have it kept together, they cannot maintain replevin. To put them to an action for damages would be really requiring them to accept, to the extent of the damages recovered, payment of the mortgage before it is due. But a mortgagee may always, by injunction, restrain any wrongful acts, the effect of which will be to impair his security.

The injunction ordered in the case was interlocutory, and to enjoin the defendants (other than the railway company) from further depriving the company of the possession or use of the property, or from interfering with the taking possession thereof by the company. It really required the defendants to do an affirmative act, to wit, allow the company to retake the property levied on. That courts of equity may issue injunctions in effect mandatory is now well settled, though they have been chary in exercising the power, so much so as to usually put the injunction in the prohibitory form. As said by the vice chancellor in *Great North of E. C. & H. J. Ry. Co.* v. *Clarence Ry. Co.*, 1 Colly. 507, on a motion for an interlocutory injunction: "That injunctions, in substance mandatory, though in form merely prohibitory, have been and may be granted by the courts, is clear. This branch of its jurisdiction is not fit to be exercised without particular caution, but certainly is one fit and necessary under certain circumstances." See, also, *Lane* v. *Newdigate*, 10 Ves. 192; *Greatrex* v. *Greatrex*, 1 De Gex & S. 692; *Evitt* v. *Price*, 1 Sim. 483; *Broome* v. *Telephone Co.*, 42 N. J. Eq. 141, (7 Atl. 851;) *Whitman* v. *Fuel-Gas Co.*, 139 Pa. St. 492, (20 Atl. 1062,)—all cases of interlocutory injunctions, mandatory in substance.

Where the complaint makes a case for a final injunction, mandatory in substance, we do not see why, under 1878 G. S. ch. 66, tit. 11, a temporary injunction, similar in effect, may not issue, if the continuance of the state of things brought about by the defendant's alleged wrongful acts will produce injury to the plaintiff. The administration of justice would be defective, if the court could not, in a proper case, restore the *status quo* pending the action. The power, however, ought not to be exercised, except under peculiar circumstances, and where it is clear the plaintiff will have a final decree for a mandatory injunction, and where the court may impose such conditions upon the issuance of the writ as that the defendant shall sustain no detriment.

In this case the circumstances were such as to justify the exercise of the power. The complaint, no allegation of which was denied on the motion, shows a right to a final decree, and the court required such security from the plaintiff as to insure that defendants will suffer no harm.

There is nothing in the point that the court is interfering with the jurisdiction of the Supreme Court of the United States. The property was not in possession of its officers, nor held under its process. The sheriff, and the writ of execution issued from the state court, did not become the officer and writ of the Supreme Court, by the issuance of a writ of error from that court, with a stay bond upon the judgment, after the levy by the sheriff. The effect of the stay bond was to prevent further proceedings to enforce the judgment.

Order affirmed.

COLLINS and BUCK, JJ., dissenting.

We dissent from that part of the foregoing opinion in which it is held that, as against the mortgagees in a railroad mortgage or deed of trust covering the railroad rolling stock and personal property, an execution issued upon a judgment against the company cannot be levied upon an item of the rolling stock, say a locomotive, and the interest of the debtor therein sold to satisfy said execution.

This conclusion of a majority of the court is squarely and exclusively placed upon a construction of 1878 G. S. ch. 34, § 73. Said section was originally Laws 1868, ch. 56, § 3. The sole intent and

purpose of the chapter last referred to were, we think, clearly indicated by its title, which was, "An act to authorize railroad companies to execute mortgages or deeds of trust and to provide for the recording of the same." The first section authorized the issuance and sale of bonds to obtain money with which to construct and equip the roads, and the execution of mortgages or deeds of trust upon the property or franchises of the railroad companies to secure said bonds. The second section provided that said mortgages or deeds might include and cover not only the present property of the companies, but property, both real and personal, afterwards acquired. The difference of opinion now existing between the members of this court grows out of the construction to be placed upon section 3, (section 73,) already quoted in full in the majority opinion. The first part of this section provides that these mortgages or deeds shall be recorded in the office of the register of deeds of each county through which the road mortgaged or deeded may run, or in which it has lands. As to this class of mortgages or deeds, this part of the section was simply a change from an existing statute, (Laws 1867, ch. 58,) which provided for the recording of railroad mortgages and deeds of trust in the office of the Secretary of State. It fixed the place or places of record for such instruments in the offices of the register of deeds of the several counties wherein the real estate was situated, as was required in case real property was mortgaged or deeded by other corporations or by private individuals. This provision was followed in the section by this language: "And for this purpose and to secure the rights of mortgagees or parties interested under deeds of trust" rolling stock and personal property of the company properly belonging or appertaining to the road "shall be deemed a part of the road." For years prior to the enactment of this statute, and at that time, there had been, and was, much difference of opinion in the courts as to the real character of rolling stock, and whether, when the rights of mortgagees and trustees were involved, it should be regarded as part of the road,—some courts calling it "fixtures," and others "real estate,"— or should be regarded as personal property. We do not see that any part of Laws 1868, ch. 56, covered that open question until the language now being considered was used. Had it, and that which followed, been omitted, we are quite sure that the controversy as to the character of

rolling stock, and as to whether a mortgage or trust deed upon the same should be filed as a chattel mortgage, to render it valid as against subsequent mortgagees, creditors, and purchasers in good faith, might easily have arisen. In our opinion, this or similar language was essential, and was simply intended to set this question at rest. It had the effect to fix the character of rolling stock and other personal property for but one purpose,—that indicated by the title of the act,—for the purpose of recording and placing a mortgage or trust deed thereon upon a different footing from the ordinary chattel mortgage, with respect to filing. As the majority opinion rests upon a construction of that part of the section we have just referred to, we need not consider the concluding paragraph of the section.

We observe what has been said in the main opinion concerning the precariousness of the mortgagees' security, if each item of the mortgaged movable property were liable to be levied on, sold, and separated from the road to which it appertains; and we have also noticed what has been suggested as the proper course or remedy for a creditor to pursue, in case an execution issued upon a judgment against a railroad company is returned unsatisfied. After many years' observation, we are unable to recall a single instance in which mortgagees of railway property have been unable to take care of themselves, and to adequately protect their interests, whenever their rights were jeopardized or their securities impaired. A levy and sale of rolling stock, although resulting, probably, in very little to the creditor, might be annoying to the mortgagee, but it would not render the mortgage lien more precarious than would a levy and sale of a common farm wagon on which there was a mortgage. It seems to us that this point is fully answered by saying that a sale upon execution of mortgaged property does not deprive the mortgagee of his lien. Such sale may be made and is always subject to the rights of a mortgagee. Laws 1883, ch. 60, § 1.

It is true, as urged in the majority opinion, that the judgment creditor of a corporation may have a remedy in case an execution in his favor is returned unsatisfied, under the provisions of 1878 G. S. ch. 76, § 9. He may sequestrate its property, and have a receiver appointed. But this section applies only to corporations organized under the laws of this state, and is, at best, a very cum-

bersome and protracted proceeding. It is not readily available to the ordinary creditor. Other remedies may be suggested as within reach, but we fear they will be found impracticable. That they have been found insufficient in other states is evidenced by the fact that in the year 1870 it became necessary, in the state of Illinois, to adopt a constitutional amendment providing "that rolling stock and all movable property belonging to railway corporations shall be considered personal property and liable to execution and sale in the same manner as personal property of individuals, and that the legislature shall pass no laws exempting any such property from execution and sale." This same provision has since been ingrafted into the fundamental law of the states of Arkansas, Missouri, Nebraska, Texas, and West Virginia.

In conclusion, we say that a statute, the purpose and scope of which are so clearly expressed in its title as the one in question,— being merely to authorize the execution of mortgages and deeds of trust, and to provide for the record thereof,—ought not to be construed, in the absence of apt words, so as to deprive a creditor of a common-law remedy to collect a judgment. The result here is that a purpose not indicated by the title to the act, and wholly foreign to that title, is given to it. Had the legislature itself, in express language, made the exemption now read into section 3 by the court, the title would have failed to express the subject of the legislation. Certainly, there is nothing in it to intimate that the legislature designed to prohibit a seizure and sale upon execution of the interest of the railroad mortgagees in and to rolling stock and other personalty, nor was it so claimed by respondent's counsel, when presenting their case. We think the order appealed from should be reversed.

(Opinions published 57 N. W. Rep. 471.)

Application for reargument denied January 29, 1894.